# IN THE UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN HOME MORTGAGE SERVICING, INC., | § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. 3:10-CV-1936-M |
| SHAUN DONOVAN, U.S. Secretary for Housing and Urban Development, in his official capacity; and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | § § § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss [Docket Entry #12]. For the reasons

explained below, the Motion is GRANTED.

## I.  BACKGROUND AND PROCEDURAL HISTORY

### A.  HUD Background

The National Housing Act ("NHA")[1] created the Federal Housing Administration

("FHA"), an organization within the Department of Housing and Urban Development ("HUD").[2]

The FHA insures eligible mortgagees against losses on home mortgage loans.[3]  The "mortgagee"

---

[1] 12 U.S.C. § 1701, *et seq.*

[2] *See* 42 U.S.C. § 3534(a); 24 C.F.R. § 200.1 ("This part sets forth requirements that are applicable to several of the programs of the Federal Housing Administration, an organizational unit within the Department of Housing and Urban Development.").

[3] 12 U.S.C. § 1709(a). *See also Capital Mortg. Bankers, Inc. v. Cuomo*, 222 F.3d 151, 152 (4th Cir. 2000).

is the original lender under a mortgage, as well as the mortgagee's successors and assigns.[4] Eligible mortgagees are those approved by HUD's Secretary.[5]

When an eligible mortgagee applies for FHA insurance and is approved, HUD's Secretary will issue a Mortgage Insurance Certificate,[6] which contractually binds the FHA Commissioner and the mortgagee.[7] The Mortgage Insurance Certificate evidences that the FHA and the mortgagee have entered a "Contract of Insurance," which incorporates by reference 24 C.F.R. part 203, subpart B, and the applicable provisions of the NHA.[8]

The approved mortgagee must service or arrange for servicing of the loan.[9] The mortgagee may transfer its servicing responsibilities to a third party, provided that the third party servicer is also a HUD-approved mortgagee.[10] If the mortgagee does so, it must notify both the mortgagor and HUD's Secretary.[11] Thereafter, the mortgagee remains responsible to HUD for the lawful servicing of its mortgages, and the actions of the third party mortgage servicer are treated as if they were the actions of the mortgagee.[12]

Under the regulations, an approved mortgagee may only sell the insured mortgage to another approved mortgagee.[13] Additionally, the mortgagee may assign insured mortgages to an approved or non-approved mortgagee; however, the original mortgagee must remain the

---

[4] 12 U.S.C. § 1707(b)(1); 24 C.F.R. § 203.251(f).
[5] 12 U.S.C. § 1709(b).
[6] 24 C.F.R. § 203.251(i).
[7] 24 C.F.R. § 203.257 (entitled "Creation of the contract") (After the FHA Commissioner issues a Mortgage Insurance Certificate, "[t]he Commissioner and the mortgagee are thereafter bound by the regulations in [subpart B] with the same force and to the same extent as if a separate contract had been executed relating to the insured mortgage.").
[8] 24 C.F.R. § 203.251(j).
[9] 24 C.F.R. § 202.5(e).
[10] 24 C.F.R. § 203.502(a).
[11] 24 C.F.R. § 203.502(b)(2).
[12] 24 C.F.R. § 203.502(a).
[13] 24 C.F.R. § 203.430 & 203.431.

"mortgagee of record."[14]  The FHA Commissioner is under no obligation to recognize or interact with any party but the mortgagee of record.[15]

Once a mortgagor defaults, the mortgagee must commence one of several specified actions, including commencing foreclosure.[16]  If the mortgagee forecloses on the collateral and chooses to convey it to HUD, in exchange for insurance benefits, the mortgagee must acquire title to the collateral and convey it to the HUD's secretary within 30 days of foreclosure.[17]  The mortgagee then has thirty to forty-five days to submit supporting documents to the FHA Commissioner, which are required for review of the insurance benefit claim.[18]  Once the collateral is conveyed to the FHA Commissioner and the required supporting documents are submitted, the FHA Commissioner may pay the requested benefits[19] or reconvey the collateral to the mortgagee upon the mortgagee's request.[20]  If, after the mortgagee conveys the collateral to the FHA Commissioner, HUD's Secretary determines that the mortgagee has failed to comply with 24 C.F.R. part 203, subpart B, HUD's Secretary may hold processing of the application for insurance benefits for a reasonable time to allow the mortgagee to comply, or alternatively, it may reconvey the property to the mortgagee and cancel the insurance benefit claim application.[21]

### B.  Plaintiff's Allegations

Since April 2008, American Home Mortgage Servicing, Inc. ("AHMSI") has serviced 161 FHA-insured mortgages (the "Loans"), which defaulted.  AHMSI alleges it is an approved mortgagee under the FHA program, and that in its role as servicer, it conveyed foreclosed

---

[14] 24 C.F.R. § 203.433(a).
[15] *Id.*
[16] 24 C.F.R. § 203.355 (a) (listing seven options: (1) obtain a deed-in-lieu of foreclosure; (2) commence a foreclosure; (3) enter into a special forbearance; (4) complete a modification of the mortgage; (5) complete a refinance of the mortgage; (6) complete an assumption; or (7) file a partial claim).
[17] 12 U.S.C. § 1710(b); 24 C.F.R. § 203.359–61.
[18] 24 C.F.R. § 203.365.
[19] 12 U.S.C. § 1710(b); 24 C.F.R. § 203.400.
[20] 24 C.F.R. § 203.362.
[21] 24 C.F.R. § 203.363.

collateral to HUD.[22]  AHMSI also alleges it submitted or attempted to submit FHA insurance benefit claims for the properties it conveyed to HUD.

According to AHMSI, HUD took possession of these properties, "most" of which were collateral for the Loans, and sold or otherwise disposed of some or all of the collateral.  AHMSI alleges Defendants did not process, pay or deny the insurance benefit claims it submitted. AHMSI also alleges Defendants have not returned the collateral or proceeds received from the alleged sale of the collateral.  AHMSI alleges Defendants have refused to pay the insurance benefits on the basis that the beneficial owners of the Loans are not approved mortgagees.[23] AHMSI further alleges it sought approval of the beneficial owners under FHA's guidelines and seeks to show that owners of "certain" Loans are FHA-approved.[24]  According to AHMSI, Defendants have not responded to its communications and have continued to refuse to process its insurance benefit claim applications.[25]

On September 27, 2010, AHMSI filed suit, alleging that Defendants did not have a right to retain the collateral or any proceeds derived from sale of such collateral.  Further, AHMSI seeks a constructive trust for property transferred from AHMSI to Defendants, as well as restitution, a declaratory judgment, and injunctive relief.  Defendants move to dismiss AHMSI's Complaint.

---

[22] Under 12 U.S.C. § 1710, insurance benefits are exchanged for the prompt conveyance of the property title to the Secretary of HUD. Under 24 C.F.R. § 203.359, the mortgagee must transfer property to the Secretary of HUD within 30 days after acquiring possession of the mortgaged property.  In contrast, under 24 C.F.R. § 203.361, upon receipt of notice of property transfer, the Commissioner of the FHA shall accept title and possession of the property. Thus, the applicable statute and regulations are unclear as to whether the FHA's Commissioner or HUD's Secretary retains title to the property.  However, the FHA is within HUD, so for purposes of this Opinion, the Court assumes, as AHMSI states, that HUD possesses the properties.
[23] Compl. at 4.
[24] Id.
[25] Id.

## II.  STANDARD

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim.[26]  Normally, the court determines subject matter jurisdiction from the sufficiency of the allegations in the complaint, because they are presumed to be true.[27]

## III.  ANALYSIS

### A.  Standing

The party seeking to invoke federal jurisdiction has the burden of establishing standing.[28] Constitutional standing analysis includes three elements: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[29]

Beyond these three constitutional requirements,[30] there are additional, prudential standing limitations,[31] including the requirement that a plaintiff must assert its own legal rights and interests, and cannot rest its claim to relief on the legal rights or interests of third parties.[32]  One cannot sue to protect the interests of another when the plaintiff's only interest is a "byproduct" of

---

[26] *See Home Builders Ass'n, v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation and internal quotation marks omitted).
[27] *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).
[28] *United States v. Hays*, 515 U.S. 737, 743, 115 S. Ct. 2431, 2435 (1995).
[29] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992) (internal quotation marks and citations omitted).
[30] *Id*. at 560, 112 S. Ct. at 2136 (stating that these three elements are the "the irreducible constitutional minimum").
[31] *Bennett v. Spear*, 520 U.S. 154, 162, 117 S. Ct. 1154, 1161 (1997).
[32] *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975).

the litigation.[33]  However, courts have generally held that a party in interest may assign its legal claims to a third party, typically by a contract assigning its full and exclusive interest in a legal claim to the assignee.[34]  The assignee may then bring suit in its own name on behalf of the party in interest.[35]

AHMIS relies on *Sprint Communications Co. v. APCC Services, Inc.* to demonstrate its standing.  There, APCC Services aggregated the legal claims of approximately 1,400 payphone operators who had claims against long-distance telephone carriers.[36]  When customers made a call on a payphone using an access code or a 1-800 number, the provider of the access code or 1-800 number paid the long-distance carrier a fee.[37]  The payphone operator could then seek payment from the long-distance carrier for the use of its payphone, and, if the carrier did not pay, the payphone operator could sue the carrier.[38]  Because pursuing these legal claims individually could be prohibitively expensive, many payphone operators assigned their claims to aggregators, like APCC Services, which collected the claims of payphone operators.[39]  If the suit was successful, the aggregator turned over the award to the payphone operators and received a fee for its services.[40]  The Supreme Court noted that the assignee's contract with the payphone operators contained clear language granting full and exclusive legal power to the assignee.[41]  Since the

---

[33] *Vt. Agency of Natural Res. v. United States* (*ex rel. Stevens*), 529 U.S. 765, 772, 120 S. Ct. 1858, 1862 (2000) (holding that a *qui tam* relator under the False Claims Act has Article III standing).

[34] *Sprint Commc'ns Co. v. APCC Servs. Inc.*, 554 U.S. 269, 284–85, 128 S. Ct. 2531, 2541 (2008) (holding that an assignee of legal claims could bring suit for another even though the assignee had to forward all proceeds to that third party and only received servicing fees).

[35] *Id.* at 285, 128 S. Ct. at 2541–42.

[36] *Id.* at 272, 128 S. Ct. at 2534.

[37] *Id.* at 271, 128 S. Ct. at 2534.

[38] *Id.*

[39] *Id.* at 271–72, 128 S. Ct. at 2534.

[40] *Id.* at 272, 128 S. Ct. at 2534.

[41] The contract stated that each operator "assigns, transfers and sets over to [the aggregator] for purposes of collection all rights, title and interest of the [payphone operator] in the [payphone operator's] claims, demands or causes of action for 'Dial-Around Compensation' . . . due the [payphone operator] for periods since October 1, 1997." *Id.* at 272, 128 S. Ct. at 2534 (alteration in original).

Supreme Court had long granted assignees standing to sue for third parties,[42] and since APCC Services was unmistakably an assignee, the Supreme Court held that APCC Services had standing, despite the fact that it would forward any aggregated award to the payphone operators.[43]

AHMSI also relies upon *CWCapital Asset Mgmt., L.L.C. v. Chicago Props., L.L.C.* In *CWCapital*, the Seventh Circuit held that a contract giving a mortgage servicer "full power and authority, acting alone" to initiate any action the servicer believed necessary may be construed as giving the servicer "effective equitable ownership" to the legal claim.[44] Although the contract at issue lacked clear language assigning ownership of the legal claim, the Seventh Circuit construed as an assignment the contract since it gave the servicer total and exclusive control over legal claims, including the right to pursue any legal actions it deemed necessary, and the right to sue in the mortgagee's name without indicating its status as servicer.[45] The Seventh Circuit found the servicer to be an "effective assignee."

However, here AHMSI does not allege it is an assignee or effective assignee of the mortgagees' legal claims, nor does it allege or show that its contract with the mortgagees of record made AHMSI an assignee or effective assignee.[46] AHMSI asserts that it is "responsible for the servicing of mortgage loans," and that it "may be subject to liability if property entrusted to its care is not returned."[47] Such an assertion merely implies that a contract exists between

---

[42] *Id*. at 285, 128 S. Ct. at 2541.

[43] *Id*. at 287, 128 S. Ct. at 2542–43.

[44] 610 F.3d 497, 501 (7th Cir. 2010).

[45] *Id.* However, when a court determines that a contract was only meant to confer a power of attorney, the contract will not suffice to give a third party standing under the assignee exception. *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche, L.L.P.*, 549 F.3d 100, 108 (2d Cir. 2008).

[46] *See, e.g.*, *Lear Siegler Servs. v. Ensil Int'l Corp.*, No. SA-05-CV-679-XR, 2009 WL 3297975, at *4 (W.D. Tex. Oct. 13, 2009) (dismissing a case for lack of jurisdiction where plaintiff failed to provide a contract showing an assignment had been made).

[47] Pl.'s Opp'n to Defs.' Mot. to Dismiss at 7.

AHMSI and the mortgagee, but does not create a reasonable inference that AHMSI is an assignee or an effective assignee of the mortgagees' legal claims.

AHMSI argues that HUD must either process insurance claims submitted by AHMSI or return collateral to AHMSI since AHMSI is "the party that dealt with [HUD] throughout the administrative process."[48] However, the NHA and its accompanying regulations define HUD's responsibilities, and the regulations state that the FHA Commissioner "shall have no obligation to recognize or deal with any party other than the mortgagee of record with respect to the rights, benefits and obligations of the mortgagee under the contract of insurance."[49] While the NHA allows for the assignment of insured mortgages, it does not require the FHA to enter into a legal or any other type of relationship with an assignee. The FHA Commissioner retains the right to deal with the mortgagee alone.

The regulations allow mortgagees to employ mortgage servicers. However, the regulations make clear that the mortgagee "shall remain fully responsible to the Secretary for proper servicing, and the actions of its servicer shall be considered to be the actions of the mortgagee."[50] Further, such assignment of servicing does not amount to assignment of the mortgagee's right to pursue legal claims against HUD or its Secretary.

AHMSI does not allege or prove that it is an assignee, that its contract with the mortgagee amounts to an effective assignment, or that the NHA and its accompanying regulations require HUD to recognize AHMSI as such. In light of those failures, AHMSI has not proven it has standing.

---

[48] *Id.* at 6.
[49] 24 C.F.R. § 203.433.
[50] 24 C.F.R. § 203.502.

### B. Sovereign Immunity & Agency Finality

A complaint must contain a short and plain statement of the grounds for the court's jurisdiction.[51]  Jurisdiction over any suit against the government requires a clear waiver of sovereign immunity, and a complaint against the government or its agency or agent must state the terms of the waiver.[52]

In its Complaint, AHMSI alleges a claim under the Administrative Procedure Act ("APA"),[53] but does not describe a waiver of sovereign immunity.  While in its response brief AHMSI argues waiver of sovereign immunity under 12 U.S.C. § 1702,[54] AHMSI's Complaint does not clearly show the basis for a waiver of sovereign immunity under the APA or 12 U.S.C. § 1702.

Even if AHMSI clearly alleged waiver of sovereign immunity under the APA, which allows suit by persons who suffer a legal wrong or are otherwise harmed by actions of a governmental agency,[55] judicial review of agency action is only available when the agency has made a final action for which there is no other adequate remedy in a court.[56]  An agency action is final when it: (1) marks the consummation of the agency's decision-making process, and (2) determines the rights or obligations of parties from which legal consequences flow.[57]

---

[51] Fed. R. Civ. P. 8(a)(1).

[52] *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S. Ct. 1126, 1131-32 (2003). *See Swift v. U.S. Border Patrol*, 578 F. Supp. 35, 37 (S.D. Tex. 1983) ("it is incumbent upon the Plaintiff to state in his complaint the grounds upon which the sovereign consented to this suit."). *See also Florance v. U.S.*, No. 3:09-CV-1732-B, 2009 WL 5173956, at *2 (N.D. Tex. Dec. 31, 2009) (dismissing action for lack of subject matter jurisdiction because plaintiff did not state in his complaint the grounds upon which the sovereign consented to the suit) (citing *Swift*).

[53] Compl. at 1.

[54] Pl.'s Opp'n to Defs.' Mot. to Dismiss, at 9.  Under 12 U.S.C. § 1702, HUD's Secretary, in carrying out certain sections of the NHA, is authorized to sue and be sued in federal court.

[55] 5 U.S.C. § 702.

[56] 5 U.S.C. § 704.

[57] *Bennett v. Spear*, 520 U.S. 154, 178, 117 S.Ct. 1154, 1168 (1997) (holding that a Fish and Wildlife Service Biological Opinion was a final agency action under the APA).

AHMSI alleges that Defendants' failure to process or pay AHMSI's insurance benefit claims or to reconvey the property to AHMSI is a final agency decision.[58] However, that is a bare legal conclusion that the Court is not bound to accept.[59] HUD's Secretary has the right to hold applications for insurance benefits for a reasonable time to permit the mortgagee to comply with FHA regulations.[60] AHMSI's bare assertion that HUD's action is final is unsupported.[61] AHMSI has not alleged sufficient facts to show that HUD's inaction is the consummation of the agency's decision-making process or the final determination of rights or obligations, so as to constitute a final agency action.

### C. Joinder

Because the Court has already held that the case should be dismissed based on a lack of standing and jurisdiction, the Court need not decide whether joinder of other parties would be required if the suit remained in this Court.[62]

### IV.    CONCLUSION

Since AHMSI has not carried its burden of properly pleading standing, a waiver of sovereign immunity, or a final agency action, the Motion to Dismiss is **GRANTED**; however AHMSI may amend its Complaint on or before twenty-one days from the date of this Opinion, if it can do so, to show that it had standing when the suit was filed, that there is a waiver of sovereign immunity, and that a final agency action has occurred.

---

[58] Compl. at 4.
[59] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[60] 24 C.F.R. § 203.363.
[61] *Bell Atlantic Corp.*, 550 U.S. at 570, 127 S. Ct. at 1974.
[62] *See Wilbur v. Locke*, 423 F.3d 1101, 1106 (9th Cir. 2005) (holding that standing and immunity must be decided before moving to questions on the merits, including required joinder of parties). *See also Cox v. City of Dallas, Tex.* 256 F.3d 281, 303–11 (5th Cir. 2001) (examining standing and immunity before deciding joinder of parties).

**SO ORDERED.**

July 20, 2011.

_____
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**